IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-00842-D

**Amy Bell,**

                Plaintiff,

v.

**Frank J. Bisignano,** Commissioner of Social Security,[1]

                Defendant.

**Memorandum & Recommendation**

      Plaintiff Amy Bell challenges an Administrative Law Judge's decision to deny her application for social security income. Bell claims that the ALJ erred in reaching that decision by failing to apply the correct legal standard to evaluate her fibromyalgia. Both Bell and Defendant Frank J. Bisignano, Commissioner of Social Security, seek a decision in their favor. D.E. 15, 17.

      After reviewing the parties' arguments, the court has determined that the ALJ erred in his determination. The record fails to support the reasons the ALJ offered to discount Bell's statements about her fibromyalgia symptoms. The undersigned thus recommends that the court grant Bell relief, deny Bisignano relief, and remand this matter to the Commissioner for further consideration.[2]

---

[1] The court substitutes Frank J. Bisignano for former defendant Martin J. O'Malley. *See* Fed. R. Civ. P 25(d).

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b). D.E. 18.

I. **Background**

   A. **Factual**[3]

Bell's medical history includes migraines, fibromyalgia, and chronic pain. In 2020, Bell visited the Mayo Clinic for aching, constant fatigue, brain fog. Tr. at 406. Providers noted 11 of 18 tender points typical of fibromyalgia. Tr. at 407. They assessed widespread pain suggestive of central sensitization with fibromyalgia features. *Id.*

In January 2021, Bell reported widespread pain of five out of ten in intensity. Tr. at 382. She continued to experience brain fog, significant fatigue, and difficulty sleeping. *Id.* Providers recommended her for a fibromyalgia treatment program. Tr. at 383. But her insurance would not cover the treatment. Tr. at 370. Providers started Bell on Cymbalta the next month. *Id.*

Dr. Bao Nguyen provided a statement on Bell's condition in September 2021. Tr. at 840. She did not tolerate Cymbalta well and was taking Prozac and Lyrica. *Id.* Fibromyalgia caused issues with Bell's cognition and memory. *Id.* And she napped frequently because of pain and fatigue. *Id.*

At a visit to Vidant Health six months later, Bell again reported fatigue, widespread pain, and cognitive issues. Tr. at 1331. Treatment notes reflect she had nine positive tender points for fibromyalgia at a return visit in June 2022. Tr. at 1378. Providers advised her how her worsening pain and fatigue symptoms may impact other body systems. Tr. at 1695.

In April 2023, an MRI showed disc herniations at L5-S1, with a mass effect on the exiting nerve roots and moderate stenosis. Tr. at 21. It also revealed a small central disc protrusion at C5-C6. *Id.*

---

[3] Bell's brief focuses on the ALJ's consideration of her fibromyalgia. So the court will concentrate its recapitulation of the factual background to the evidence relating to that condition.

Around this time, Bell attended physical therapy for an evaluation of her chronic pain and fibromyalgia. Tr. at 1846. She reported daily pain and numbness in her feet. *Id.* Providers noted pain, an abnormal gait, and decreased walking tolerance. Tr. at 1849. With an unstable presentation and unpredictable features, her potential for rehabilitation was fair. *Id.*

The following month, Bell reported some benefit from Lyrica. Tr. at 1772. But she continued to experience constant pain, rated as seven out of ten in intensity, with her feet most affected. *Id.* Providers noted 16 positive tender points. Tr. at 1773, 1776. At a return visit the next month, Bell reported daily flares, rating her pain as eight out of ten. Tr. at 1766. Providers noted an antalgic gait and 16 positive tender points. Tr. at 1769–70. It was unclear if Lyrica provided any benefit. Tr. at 1770.

Providers remarked that prior testing had not yielded definite causes of Bell's continued pain and neurological symptoms. Tr. at 21. But there was no evidence of inflammation or an autoimmune or connectivity disease. *Id.* Although her symptoms tracked pain processing issues and fibromyalgia, records note that Bell had difficulty believing it. Tr. at 22. And there was a "component of catastrophication" that complicated her prognosis. *Id.*

From a mental health standpoint, Bell suffered from anxiety, for which providers prescribed medication. *Id.* A September 2021 mental status examination showed normal attention, memory, and judgment, with stable anxiety. *Id.*

Six months later, Bell reported worsening anxiety from emotional distress. *Id.* She was experiencing issues with memory, cognition, and concentration. *Id.* But a mental status examination was unremarkable, showing normal memory and concentration. *Id.* Providers assessed an anxiety disorder. *Id.*

Because of her ongoing reports of memory and cognition issues, Bell had a neuropsychiatric assessment in June 2022. *Id.* She responded to instructions at a medium pace, but had a slow to medium pace when completing tasks. *Id.* But she had not taken her Adderall that day. *Id.* Bell appeared somewhat irritable and had some negative remarks about her performance. *Id.* And she claimed that she limited social events and disliked being around people. *Id.*

The examiner noted that Bell reported a larger than average number of somatic symptoms along with an unusual combination of responses. *Id.* So there were credibility issues with her memory and cognition symptoms. *Id.* The examiner assessed an anxiety disorder and attention-deficit hyperactivity disorder (ADHD). *Id.*

Bell reported limitations in her abilities to sit, stand, walk, use her hands, and perform postural movements, as well as remembering, understanding, and concentrating. Tr. at 20. She experiences pain, numbness, and a pins and needles sensation in her feet. Tr. at 60.

Bell can drive and perform light chores but needs help with personal care. Tr. at 21. She estimated that she can stand for about 15 minutes and carry around five pounds. Tr. at 51, 55.

**B.     Procedural**

In March 2021, Bell protectively applied for disability benefits alleging a disability that began three months earlier. After the Social Security Administration denied her claim at the initial level and upon reconsideration, Bell appeared for a telephonic hearing before an ALJ to determine whether she was entitled to benefits. The ALJ determined Bell had no right to benefits because she was not disabled. Tr. at 14–26.

The ALJ found that Bell lived with several severe impairments. Among these were fibromyalgia, meningioma, degenerative disc disease, migraines, generalized anxiety disorder

(GAD), and attention-deficit hyperactivity disorder (ADHD). Tr. at 17. The ALJ also found that Bell's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.*

Next, the ALJ determined that Bell had the residual functional capacity (RFC) to perform light work with other limitations. Tr. at 19–20. She can read ordinary newspaper or book print. *Id.* 1401. Bell can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. *Id.* And she can balance frequently. *Id.*

Bell can work in moderate noise and occasionally work at unprotected heights, with moving mechanical parts, and in extreme heat. *Id.* She can understand, remember, and carry out instructions by performing simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly-line work). *Id.* Bell can use her judgment to make simple, work-related decisions. *Id.* And she can frequently interact with supervisors and occasionally interact with coworkers and the public. *Id.*

Then the ALJ concluded that Bell could not perform her past relevant work as a special education teacher. Tr. at 24. But considering her age, education, work experience, and RFC, the ALJ found that other jobs existed in significant numbers in the national economy that Bell could perform. Tr. at 25. These jobs include marker, office helper, and photocopy machine operator. *Id.* These findings led the ALJ to conclude that Bell was not disabled. Tr. at 26.

After the Appeals Council denied review, Bell commenced this action in September 2024. D.E. 1. Both parties ask the court to issue a decision in their favor. D.E. 15, 17.

**II.    Analysis**

Bell persuasively argues that the ALJ failed to properly consider her fibromyalgia symptoms. Although he determined that it was a severe impairment, the ALJ found that Bell's statements about the intensity, persistence, and limiting effects of her symptoms did not align with

5

the evidence. But the ALJ's decision discloses no sufficient explanation to disbelieve Bell's claims about her fibromyalgia and the limitations it caused. Lacking a sound basis to discount her statements, the court finds that the ALJ erred in evaluating this condition. So this issue requires further consideration.

A. **Standard for Review of the Commissioner's Final Decision**

When a claimant appeals the Commissioner's final decision, the district court considers whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

B. **Standard for Evaluating Disability**

Under the Social Security Act, a claimant is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step, sequential process when considering disability claims. 20 C.F.R. § 404.1520.

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claim is denied. *Id*.

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If not, the claim is denied. *Id*.

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If the impairment appears in the Listing or if it is equal to a listed impairment, the ALJ must find that the claimant is disabled. *Id.*

But if the ALJ concludes that a presumption of disability is not warranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then "express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work [:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform his past work despite his impairments. *Id.* § 404.1520(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, work experience, and RFC, can perform other substantial gainful work. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if so, they are considered disabled. *Id*.

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant has the burden of proof on the first four steps, but the Commissioner bears it on the last one. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

C.  **Impairment Evaluation**

Bell contends that the ALJ failed to reference reliable evidence in discounting her statements about her fibromyalgia. The Commissioner contends that the ALJ properly considered this condition without requiring objective evidence to corroborate its resulting symptoms. The undersigned finds that the evidence does not support the ALJ's reasons for discrediting Bell's statements about her fibromyalgia symptoms. So remand is necessary to consider this issue further.

1.  **Subjective Statements**

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016); 20 C.F.R. § 404.1529. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. 2016 WL 1119029, at *3; § 404.1529(b).

If the claimant clears this threshold, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine how much they limit the claimant's ability to work. *Id.* In making that determination, the ALJ considers the "entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

8

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig* v. *Chater*, 76 F.3d 585, 595 (4th Cir. 1996) (holding that claimant's allegations of pain need not be accepted to extent that they conflict with the record). In a district court's review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively*, 739 F.2d at 989–90.

No objective evidence is required in assessing the alleged symptoms at the second step. *Oakes* v. *Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas*, 983 F.3d at 95). Instead, "a claimant is entitled to 'rely exclusively on subjective evidence to prove that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working[.]'" *Id.* (citing *Arakas*, 983 F.3d at 96); *see also Shelley C.* v. *Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (error to discount subjective statements based on objective medical evidence, or a lack of it, where condition may not produce such evidence); *Clifford E.* v. *O'Malley*, No. 1:23-CV-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024) (ALJ cannot "requir[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions.") (citation omitted).

But the ALJ does not have to accept the claimant's statements at face value. *Hawley* v. *Colvin*, No. 5:12-CV-260-FL, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013). The ALJ must balance the record evidence, mindful that "inconsistencies in the objective medical evidence is one of the many factors" to consider in evaluating an individual's symptoms. SSR 16–3p, 2016 WL 1119029, at *5.

So although "contradictory evidence may discredit [claimant's] subjective statements . . . a mere absence of medical evidence should not." *Minchew* v. *Kijakazi*, No. 5:22-CV-214-FL, 2023 WL 5919333, at *8 (E.D.N.C. Aug. 21, 2023), *adopted by* 2023 WL 5916528 (E.D.N.C. Sept. 11,

9

2023); *see William J.* v. *Kijakazi*, Civ. No. 22–2962, 2023 WL 6518118, at *5 (D. Md. Oct. 5, 2023) ("[W]hile a claimant cannot be required to prove the extent and severity of their subjective complaints with objective evidence, such evidence—if it exists—may still be considered by the ALJ to evaluate those complaints.").

Here, the ALJ found Bell's impairments may reasonably cause the symptoms she alleged. Tr. at 22–23. But the evidence did not fully support her statements about "the intensity, persistence and limiting effects of these symptoms[.]" *Id*.

### 2. Residual Functional Capacity

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford* v. *Colvin,* 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96–8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio*, 780 F.3d at 636. But "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis

11

by a state agency consultant. *See, e.g.*, *Linares* v. *Colvin*, No. 5:14-CV-00129, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with [Soc. Sec. Ruling] 96–8p." (citing *Lemken* v. *Astrue*, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010))).

The ALJ found that Bell could perform light work with other limitations. Tr. at 19–20. The RFC included postural, environmental, and non-exertional restrictions. *Id.*

### 3. Fibromyalgia

Fibromyalgia is "a disorder of unknown cause characterized by chronic widespread soft-tissue pain particularly in the neck, shoulders, back, and hips, which is aggravated by use of the affected muscles and accompanied by weakness, fatigue, and sleep disturbances." *Arakas*, 983 F.3d at 91. Its "symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Id.* at 96. So "physical examinations of patients with fibromyalgia will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Id.*

In clarifying how an ALJ should evaluate a claimant's symptoms, the Fourth Circuit has stated that the ALJ must conduct a correct symptom evaluation, taking care not to improperly increase a claimant's burden of proof "by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* at 96 (quoting *Lewis* v. *Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). This is particularly important in a case involving fibromyalgia because it is a disease that typically "eludes such measurement." *Arakas*, 983 F.3d at 96 (quoting *Green-Younger* v. *Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)). Given the nature of this disease, "ALJs may not rely on objective medical evidence or the lack thereof—even as just one of multiple

factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Id.* at 97.

### 4. Application

Bell contends that the ALJ erred by relying on a lack objective evidence coupled normal examination findings to discredit her statements about her fibromyalgia symptoms.

The ALJ remarked that Bell consistently alleged severe pain, trouble moving about, and impaired memory and concentration. Tr. at 23. But he found her statements "inconsistent with the record" which showed "generally normal physical and mental findings" as well as "objective test findings which did not show any autoimmunity issue, connective tissue disease, or inflammation[.]" *Id.*

The ALJ also remarked that Bell did not receive the kind of medical treatment expected of a disabled person. *Id.* Although she sought care from many treatment specialists, Bell required no hospitalization, emergency care, intensive therapy, or invasive treatment protocols. *Id.* Instead, her treatment consisted mostly of prescribed medications. *Id.*

There are several problems with the ALJ's findings. First, the ALJ pointed to normal or benign examination findings. But because of its unique nature, examinations often produce normal results in fibromyalgia patients. *Arakas*, 983 F.3d at 97. So objective indicators have questionable relevance to assessing the condition. *Id.*

Second, the ALJ observed that no objective tests showed inflammation, an autoimmune condition, or connective tissue disease. But fibromyalgia produces no objective medical evidence.[4] The ALJ did not explain, nor is it evident, what significance the absence of inflammation, autoimmune condition, or connective tissue disease has on Bell's fibromyalgia.

---

[4] Aside from trigger points, which Bell exhibited.

Third, the ALJ remarked that the treatment Bell received was not the type one would expect of a disabled person. Tr. at 23. He noted that her care consisted mostly of prescribed medication. *Id.*

Yet the ALJ identifies no specific care for fibromyalgia that providers recommended and Bell failed to pursue. It is not apparent that more significant, intensive protocols are necessary for fibromyalgia symptoms to be considered disabling. Nor is there evidence that prescribing medication to treat its symptoms, while a "conservative" measure, alludes to symptom severity.

What's more, it is unclear what bearing Bell's lack of hospitalization or emergency treatment has on her fibromyalgia. There is no evidence that the usual course of this chronic condition generally requires such care.

The record reflects that Bell sought treatment from several specialists. And her reported symptoms, especially chronic pain and significant fatigue, were consistent throughout the record.

The Commissioner argues that the ALJ discussed all of Bell's physical impairments together, without a separate discussion of her fibromyalgia. And he maintains that there is no error in an ALJ considering a claimant's impairments collectively.

Bisignano is correct, to the extent that the ALJ's analysis complies with controlling legal principles. But in evaluating a claimant with fibromyalgia, the ALJ may not point to a lack of objective evidence, or cite benign or normal examination findings, to cast doubt on the symptoms alleged. Such evidence may be relevant to the analysis of other impairments and their limiting effects. Yet the nature of certain conditions like fibromyalgia are indefinable with objective findings and depend on subjective reports of symptoms. *Arakas*, 983 F.3d at 97–98 (some objective tests may have no relevance to the severity, persistence, or limiting effects of a claimant's

condition). So to discount fibromyalgia symptoms, an ALJ must identify reasons other than normal examination findings or a lack of objective evidence.

The ALJ identified no other reasonable grounds to discredit Bell's statements about her fibromyalgia symptoms.[5] Without a separate analysis of fibromyalgia, the ALJ's proffered reasons for finding Bell's statements less than fully believable apply to all Bell's conditions, including fibromyalgia.[6] Controlling Fourth Circuit case law has found that objective evidence, or a lack of it, cannot be used to discount subjective symptoms of fibromyalgia. *Id.* Because the ALJ relied on such evidence, the undersigned cannot find that he offered a sound basis to question Bell's statements about her fibromyalgia.

The ALJ's summary of the medical evidence does not disprove the severity of Bell's fibromyalgia. The ALJ declined to fully credit Bell's statements about the limiting effects of her symptoms because the record contradicted them. But how the evidence detracts from her allegations is not apparent in his decision.

Neither generally normal examination findings nor unremarkable objective tests undermine symptoms of pain and fatigue that Bell alleged. Her daily activities did not suggest greater functioning to discredit Bell's statements about her symptoms and limitations.

In sum, there is evidence in the record that supports the limiting nature of Bell's fibromyalgia symptoms. It is unclear whether the ALJ required Bell to have objective evidence to corroborate her symptoms. But the record discloses no tenable reasons for finding that her

---

[5] The ALJ also found Dr. Bao's statements unpersuasive. Tr. at 23. Among other reasons, the ALJ noted that Dr. Bao appeared to base his findings primarily on Bell's self-reported limitations. Tr. at 24. Given the subjective nature of fibromyalgia, reliance on a patient's reports would seem appropriate for that condition.

[6] And the undersigned makes no findings on whether there were sufficient grounds to discount Bell's statements about her fibromyalgia symptoms had the ALJ specifically addressed this condition, apart from Bell's other impairments.

statements about her fibromyalgia symptoms and their effects were not fully consistent with the record. This error, in turn, has the potential to taint the RFC determination. So remand on this issue is appropriate.

## III. Conclusion

For these reasons, the undersigned recommends that the court grant Bell's request for relief (D.E. 15), deny Bisignano request for relief (D.E. 17), and remand this matter to the Commissioner for further consideration.

The Clerk of Court must serve a copy of this Memorandum and Recommendation (M&R) on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: July 3, 2025

_____
Robert T. Numbers, II
United States Magistrate Judge